**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CRAIG SCHWARTZ,

    Plaintiff,

v.

CITY OF DETROIT,

    Defendant.

Case No. 05-74061

Hon. Victoria A. Roberts

_____

**OPINION AND ORDER**

**A.    INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Enforcement of General Release of Claims and Settlement Agreement, filed May 19, 2008 [Doc #45]. After briefing was completed, the Court instructed the parties to file additional supplemental briefs answering five questions. Plaintiff filed his Supplemental Brief on September 29, 2008 [Doc #58]. Defendant filed its Supplemental Brief on September 30, 2008 [Doc #59].

After thorough review, the Court finds the questions presented are:

(1) what procedures govern resignation in the Detroit Police Department; and

(2) were the procedures related to payment of banked time and other moneys due to Plaintiff under the Settlement Agreement followed.

The Court concludes that the Master Agreement between the City of Detroit and the Detroit Police Command Officers Association, July 1, 1996 - June 30, 2004 ("CBA")

1

governs resignation in the Detroit Police Department and the procedures for payment of banked time. The Court also finds Defendant did not follow the CBA regarding the timing of payment of banked time to which Plaintiff was entitled.

The Court **GRANTS** Plaintiff's Motion in part and **DENIES** it in part.

**B.     BACKGROUND**

Plaintiff, a former police officer and member of the Detroit Police Command Officers Association ("DPCOA"), filed this race discrimination action against his employer, the City of Detroit, under 42 U.S.C. §§ 1981 and 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and, the Michigan Elliot Larsen Civil Rights Act, MCL 37.2101 et seq. Plaintiff alleged he was unlawfully subjected to discrimination in the terms and conditions of his employment. This included demotion from Deputy Chief to Lieutenant because he is white. The parties facilitated the case with Magistrate Judge Majzoub and settled. They placed the settlement and terms on the record on October 9, 2007 (Doc. #48) and signed a written "General Release of Claims and Settlement Agreement" ("Agreement") consistent with the negotiated terms and conditions. On December 19, 2007, the Court entered a Stipulated Order and Dismissal (Doc. #43); the Court retained jurisdiction to enforce the settlement.

Plaintiff says Defendant breached the Agreement by failing to pay for 1824 hours of banked unused sick time and other accumulated time and salary to which he was entitled. Plaintiff asks the Court to enforce the parties' Agreement and compel Defendant to pay $113,913.80, plus costs, interest from the date of execution of the Agreement, attorney fees and any other appropriate sanction. Defendant says Plaintiff

was paid all banked time and other pay he was entitled to receive and is not entitled to any additional payment.

**C.   CASE LAW AND ANALYSIS**

   **1.   The Court Has Jurisdiction To Enforce The Settlement Agreement**

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.), cert. denied, 429 U.S. 862, 97 S. Ct. 165, 50 L. Ed. 2d 140 (1976).  The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in policy favoring settlement of disputes and the avoidance of costly and time-consuming litigation. *Kukla v. National Distillers Prods., Co.*, 483 F.2d 619, 621 (6th Cir. 1973).  Before enforcing a settlement agreement, however, a district court must conclude that the parties reached an agreement on all materials terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988).

Courts are empowered to summarily enforce settlement agreements in order to promote the policy of speedy and reasonable resolution to disputes. *Aro Corp.,* 531 F.2d at 1372.  While summary enforcement of a settlement agreement may promote a prompt resolution of the litigation, ordinarily the district court must hold an evidentiary hearing where facts material to an agreement are disputed. *Kukla*, 483 F.2d at 621.

The summary procedure is best suited for situations in which the terms of the settlement agreement are clearly established and the dispute centers on the legal significance of those terms, rather than their factual existence. *Kukla*, 483 F.2d at 621-22.  No evidentiary hearing is necessary where an agreement is clear and no issue of fact is present. *Re/Max Int'l Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (2001).  The

trial court may not dispense with an evidentiary hearing, however, when the situation presents complex factual issues related either to the formation or the consummation of the contract. *Id.* Issues of fact may be satisfactorily resolved only through a more plenary proceeding including testimony and cross-examination of witnesses. *Kukla*, 483 F.2d at 622; *Re/Max*, 271 F.3d at 646.

The Court concludes an evidentiary hearing is not necessary; the terms of the Agreement are clearly established and the dispute centers on the legal significance of those terms.

**2. Defendant Properly Excluded Plaintiff's Banked Sick Time From Payout Under the Agreement**

Plaintiff says the Agreement requires Defendant to pay all banked time upon his resignation, including unused sick time, at the highest hourly Deputy Chief rate. Plaintiff also says the Settlement Agreement makes no reference to any other extrinsic or ancillary agreement or document, so the CBA is inapplicable. Notwithstanding the Agreement, Defendant says the CBA between the DPCOA and the City of Detroit precludes payment of unused sick time upon resignation.

The Agreement reads:

> II. For and in consideration of SCHWARTZ promises, agreements and undertakings set forth throughout this Agreement, the CITY will pay TWO HUNDRED AND EIGHTEEN THOUSAND (sic) DOLLARS ($218,000.00) Dollars in *toto* for all claims either present of (sic) in the future including all costs and attorney fees directly payable to SCHWARTZ and his attorney Joel Sklar, following the execution of a Stipulation to Order of Dismissal with prejudice and without costs of United States District Court, Eastern District, Case No. 05-74061.
>
> .   .   .   .

4

IV. This settlement will not affect Annuity or the vested pension rights of SCHWARTZ whatever they may be at the time of resignation.

.        .        .        .

V. SCHWARTZ will be carried at his current rank and rate of pay. He will not be required to report to work, and will (sic) upon the receipt of the settlement check SCHWARTZ will immediately resign from his position at the City of Detroit Police Department and will execute a Stipulated Order of Dismissal with prejudice and without costs as specified in Paragraph II.

VI. Upon his resignation form (sic) the City of Detroit Police Department SCHWARTZ will receive whatever banked time he is entitle (sic) to receive upon his resignation as a payout. This payout will be consistent with those procedures for resignation in the Detroit Police Department. This banked time will be calculated at the highest hourly Deputy Chiefs rate.

.        .        .        .

XX. This Agreement contains all the terms and conditions agreed upon by the parties hereto regarding the subject matter of this Agreement. Any prior written agreements, promises, negotiations or representations, either oral or written, relating to the subject matter of this Agreement not expressly set forth in the Agreement are of no force or effect.

Both parties say the Agreement is unambiguous. The Court agrees.

Under Michigan law, construction of a contract is a legal question. See *Zurich Ins. Co. v. CCR & Co.*, 226 Mich. App. 599 (Mich. Ct. App. 1997). An agreement to settle a pending lawsuit is a contract and is reviewable by the legal principles applicable to contract construction and interpretation. See *Farm Bureau Mut. Ins. Co. v. Buckallew*, 262 Mich. App. 169 (Mich. Ct. App. 2004). Settlement agreements are favored and discovering the parties' intent in forming the contract should be the goal of courts interpreting such agreements. See *Eyde v. Eyde*, 2004 Mich. App. LEXIS 1636 (Mich.

Ct. App. 2004). In determining the intent of the parties to a contract, the terms in a contract should be given their plain ordinary meaning. See *Bandit Indus., Inc. v. Hobbs Int'l, Inc.*, 463 Mich. 504 (Mich. 2001). Every word in an agreement must be taken to have been used for a purpose and no word should be rejected as surplusage if the court can discover any reasonable purpose for the word which can be gathered from the whole instrument. *Associated Truck Lines, Inc. v Baer*, 346 Mich. 106 (Mich. 1956).

If the language is unambiguous, courts must interpret and enforce the agreement as written. *Quality Products & Concepts Co. v. Nagel Precision, Inc*, 469 Mich. 362, 375 (2003). "Thus, an unambiguous contractual provision is reflective of the parties' intent as a matter of law." *Id*.

These parties negotiated a settlement of $218,000.00 in exchange for the dismissal of Plaintiff's retaliation and race discrimination claims. Paragraph II of the Agreement expressly states that the payment is for all claims, present or future. Plaintiff retained his employment, but was required to resign upon receipt of payment. *See* ¶ V. The parties also agreed to maintain the status quo with respect to the terms and conditions of Plaintiff's employment, with the exception of two specifically outlined terms -- his duty to report to work and the hourly rate at which banked time would be calculated and paid upon his resignation. *See* ¶ V and VI.

This is corroborated by the transcript of the Settlement Hearing [Doc #48] when Plaintiff's counsel placed the terms on the record:

.      .      .      .

>   MR. SKLAR: Correct, Your Honor. As I understand it, Your Honor, the
>   parties have agreed the defendant will pay to Craig Schwartz and his
>   counsel, myself, Joel Sklar, the amount of $218, two-one-eight thousand

6

dollars –

THE COURT: Two hundred and eighteen thousand dollars.

MR. SKLAR: Two hundred and eighteen hundred thousand dollars – I'm sorry.

MR. JARVIS: Two hundred and eighteen thousand.

MR. SKLAR: Right.

THE COURT: Two hundred and eighteen thousand dollars is to be paid by the defendant, City of Detroit, to the plaintiff.
What is the next agreed term?

MR. SKLAR: The next agreement, Your Honor, is that all time that he's entitled to at resignation.

THE COURT: You're calling that all banked time?

MR. SKLAR: All banked time, right, that he's entitled to to (sic) his resignation. Will be paid at the D.C. rate.

MR. JARVIS: That's correct.

THE COURT: For the record, D.C. is Deputy Chief rate.

MR. SKLAR: Deputy Chief, that's correct. Craig Schwartz, the plaintiff will retire as the commander, correct?

MR. JARVIS: That's correct.

MR. SKLAR: He will be provided with a neutral letter of recommendation of employment, correct?

MR. JARVIS: Yeah, he will resign –

MR. SKLAR: I'm sorry. He will resign as a commander.

MR. JARVIS: Yeah.

Both the Agreement and the transcript make clear that the parties contemplated several important facts: (1) Plaintiff would resign as opposed to retire from the police

department; (2) the payment for banked time would be separate and distinct from the payment for settling the case; (3) Plaintiff would only receive the banked time he was entitled to receive upon resignation; and (4) payout of banked time would be determined by procedures for resignation in the DPD.

Plaintiff's Affidavit seeks to contradict the express provisions of the Agreement by suggesting that Plaintiff was told during negotiations that he would receive all of his banked time, including sick time. Defendant disputes this contention. However, the parol evidence rule prohibits the introduction of extrinsic evidence to contradict or vary the terms of a written contract. This rule bars introduction of not only negotiations but also the introduction of prior or contemporaneous agreements that contradict the written agreement. *Goodwin, Inc. v. Coe Pontiac, Inc.* 392 Mich. 195, 204 (1974). Before the parol evidence rule may be invoked, there must be a finding that the written document was intended to be a final expression of the parties' agreement. *American Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 422 (6th Cir. 1984). The Agreement incorporates the parol evidence rule at paragraph XX. The Agreement also says at paragraph XIV that it constitutes the entire agreement between the parties.

Moreover, the Agreement did not promise Plaintiff payment for all of his banked unused sick time upon resignation. The Agreement contains no specific reference to banked unused sick time; instead, it says "upon his resignation . . . SCHWARTZ will receive whatever banked time he is entitle[d] to receive upon his resignation as a payout." If the parties intended for Plaintiff to receive a full payout for all of his banked unused sick time upon resignation, they could have said that. Instead, they agreed that "this payout will be consistent with those procedures for resignation in the Detroit Police

Department." This sentence makes clear that the parties contemplated that some procedure outside the four corners of the Agreement would determine when and how the payout of banked time would occur. "Banked time" is not defined in either the CBA or the Agreement.

The parties dispute which procedures of the DPD are applicable; the Agreement is not specific. Defendant says the CBA governs the accumulation and payment of banked time, including sick time. (Defendant originally argued that the Detroit City Code governed the accumulation and payout of banked sick leave time; it abandoned that argument). Plaintiff says there is an unwritten policy for payout of banked time, which dictates that a uniformed officer who resigns and is vested for pension purposes is paid for all banked unused sick time. Plaintiff supports this by affidavit of Sergeant Mark Henning. Plaintiff also says a resigning officer does not forfeit, waive or relinquish payment for banked or unused time upon resignation. Plaintiff relies upon the affidavit of Mary Ellen Gurewitz, a DPCOA attorney, to support this contention.

Defendant rejects Sergeant Henning's testimony and questions his knowledge. Defendant says Henning is merely a police personnel clerk, with no authority beyond the ability to review and forward paperwork to units of the police department. Defendant also rejects Gurewitz's testimony as irrelevant; it only refers to the application of unused banked sick time upon retirement.

Article V of the Detroit City Code governs the rules for vacation and sick leaves for city employees. However, Art. V, Sec. 13-5-8 specifically says that "the provisions of this article *shall not* apply to the uniformed members of the police department or the fire department." Detroit City Code 1964, § 16-7-4 (emphasis added). Instead, uniformed

9

members of the police department are subject to the terms of a negotiated CBA, which has as its stated purpose:

> "the promotion of harmonious relations between the City and the Association; the establishment of an equitable and peaceful procedure for the resolution of differences; orderly resolution of grievances; and the establishment of rates of pay, hours of work, and other terms and conditions of employment both economic and non-economic." *CBA, Art. 1*.

This CBA includes rules related to vacation time, sick leave time, separation and retirement.

The CBA provides:

**24.** **Sick Time**

A. Sick Banks: There are two sick banks, current sick bank and seniority sick bank.

1. Current sick bank is designated as that sick time accumulated at the rate of one day for every calendar month in which a member has been credited for not less than eighteen (18) paid time days, excluding overtime. The accumulation of the current sick bank is limited to 125 days. Effective June 30, 1998, the current sick bank shall accumulate without limitation.

.          .          .          .

K. <u>Retirement and Death Sick Leave Payment</u>: Immediately preceding the effective date of a member's retirement, exclusive of duty and non-duty disability retirement, or at the time of a member's death, he/she or his/her estate shall be entitled to pay for his/her unused accumulated sick banks as follows:

A member shall receive a full pay for 50% of the unused accumulated sick bank amounts.

**33.** **Miscellaneous**

.          .          .          .

F. <u>Lump Sum for Banked Time</u>:

10

> 1. Whenever a member leaves employment with the City, such employee will be paid for all banked time, other than sick time, in a lump sum payment within (30) calendar days of the separation, at his/her rate of pay in effect at the time of the separation. This includes, but is not limited to separation with a deferred vested pension or under a disability.
>
> 2. Should the Department fail to make the payment as provided herein within the required time frame, the Department will pay the affected member interest at the Michigan Judgment Interest rate from the 30th day following the member's separation.
>
> 3. Furthermore, when a member is entitled to payment of a lump sum payment of unused accumulated sick banks amounts in accordance with the agreement between the parties, those payment (sic) shall also be subject to the time frame and interest requirement as set forth in this Section.
>
> Master Agreement between the City of Detroit and the Detroit Police Command Officers Association, July 1, 1996 - June 30, 2004.

Since the City Code does not apply to uniformed officers, the Court finds that the CBA is the policy which determines Plaintiff's annuity rights, vested pension rights, and entitlement to banked time. Plaintiff agreed to pay dues and be covered by the CBA; in fact, it was a condition of continued employment. *CBA, Art. 3.* He remained subject to its terms and conditions throughout 14 years of employment. In fact, Plaintiff impliedly relies on the terms of the CBA to assert entitlement to longevity pay and miscalculated vacation days he says he was denied. *See* Affidavit of Craig Schwartz.

If the Court accepted Plaintiff's assertion that the integration clause in paragraph XX of the Agreement precluded application of the CBA, it would also preclude application of the unwritten policy which Plaintiff propounds. There would be no way to determine Plaintiff's annuity rights, vested pension rights, and right to banked time since

the parties did not include a method for determining those rights in the Agreement. To read the Agreement in this way would render superfluous this sentence in paragraph VI: "This payout will be consistent with those procedures for resignation in the Detroit Police Department." Such a technical or torturous interpretation is disfavored by Michigan law. See *Bianchi v. Automobile Club of Michigan*, 437 Mich 65 (Mich. 1991).

Plaintiff also argues that notwithstanding any prohibition in the CBA, Article 33(F)(3) permits Plaintiff and Defendant to agree to the receipt of a lump sum payment for all banked time, including unused sick banks. However, a thorough review of the CBA leads to a different result. The CBA refers to "parties" throughout the document and obviously pertains to the parties to that agreement: the City of Detroit and the DPCOA. Interpreting the CBA, Article 33(F)(3) in its plain and easily understood sense leads to the conclusion that when a member is entitled to payment of unused sick banks in accordance with the agreement between the parties to the CBA (not the parties to any other separate agreement), it must be paid within 30 days of notice.

Moreover, even if the Court accepted Plaintiff's interpretation of Article 33(F)(3) of the CBA, which it does not, it is inapplicable here. Although Plaintiff and Defendant could have done so, they did not agree to a definite lump sum payment for banked unused sick time. The Agreement is unambiguoust. A party who forfeits his or her right to litigation by entering into an unambiguous settlement agreement may not change course and argue that such an agreement is ambiguous merely because that party failed to clearly negotiate the terms of the agreement. See *Hildrofiltros, de Mexico, S.A. de C.V. v. Rexair, Inc.*, 355 F.3d 927, 930 (6th Cir. 2004).

The Court finds the parties contemplated that Plaintiff's employee benefits rights

would be determined in accordance with the CBA.  The Court also finds that the CBA mandates payment for all banked time within 30 days of separation; however, it specifically excludes payment of unused sick time from that calculation.  The CBA requires payment of banked unused sick time only upon retirement or death, at the rate of 50% of the accumulated amounts.  The Court finds that Defendant properly excluded Plaintiff's banked unused sick time from payout when determining the banked time he was entitled to receive upon resignation.  The Court has no opinion regarding Plaintiff's entitlement to payment of banked unused sick time upon his retirement; the Agreement only covers banked time upon resignation.

> **3.      Defendant Properly Denied Plaintiff Salary Payments After November 30, 2007**

Plaintiff says Defendant wrongfully deducted $7,093.84 in salary he received after December 1, 2007, even though it required him to return on several occasions between December 4 and 21, 2007.

The parties placed an agreement on the record regarding Plaintiff's eligibility to continue to receive salary.  The settlement hearing transcript [Doc #48] says:

> MR. JARVIS: . . . . But we're going to ask – we're going to carry him as paid and he's not to show up at work after today.
>
> MR. SKLAR: Okay.  And he will be carried as paid until such time as the release is approved and the case dismissed.
>
> MR. JARVIS: That's correct.

The release/Agreement was signed by Plaintiff and counsel on October 16, 2007.  The case was dismissed on December 19, 2007.  Thus, what was placed on the record

13

presents two different dates to choose from. To complicate matters more, what was said at the settlement hearing differs from the express terms of the Agreement, which required Plaintiff to immediately resign upon receipt of the settlement check.

Under Michigan law, absent evidence of duress, entering a superseding, inconsistent agreement covering the same subject matter rescinds an earlier contract and operates as a waiver of any claim for breach of the earlier contract not expressly reserved. *Joseph v. Rottschafer*, 248 Mich. 606, 610-611, 227 N.W. 784 (1929); *Culver v. Castro*, 126 Mich. App. 824, 827-828, 338 N.W.2d 232 (1983); see also *Lafayette Dramatic Production v. Ferentz*, 305 Mich. 193, 217-219 (1943).

The Court finds that the Agreement modified the parties' earlier oral terms regarding salary payments to Plaintiff. The Agreement required Plaintiff to "immediately resign upon the receipt of the settlement check." Plaintiff, through counsel, received the settlement check on November 30, 2007. His resignation should have been tendered on that date. Plaintiff's actual notice of resignation, signed and received on December 4, 2007, was contrary to the Agreement.

Defendant did not err in calculating Plaintiff's entitlement to benefits with an effective separation date of November 30, 2007. The Court also finds that Defendant did not err in deducting salary payments which Plaintiff received after that date. Plaintiff was not entitled to receive a salary and should not have been on the payroll after November 30, 2007. Any salary payments Plaintiff received after that date were due to administrative processing errors, and Defendant was entitled to reimbursement.

### 4. Defendant Properly Denied Plaintiff Longevity Pay

Plaintiff says he was wrongfully denied $1,755.60 in longevity pay because

Defendant improperly noted his separation date as November 30, 2007, although he remained on the payroll until his retirement became effective on December 22, 2007.

When the parties placed the settlement on the record, there was no mention of an agreement regarding longevity pay. Longevity pay is addressed in Article 21 of the CBA. On an annual basis, members who served as City employees for at least 5 years, receive on the first pay date after December 1st, a longevity payment which incrementally increases based upon years of service. Article 21(B) says:

> Members who have qualified for longevity pay and have accumulated at least 216 days of paid time exclusive of overtime or premium time during the year immediately preceding any December 1st date or other day of payment will qualify for a full longevity payment provided they are on the payroll on the December 1st day or any other date of qualification. Except for members first qualifying for increments, the payment will be made in a lump sum annually on the first pay date after December 1st.

In addition, Article 21(E) says:

> Prorated longevity payments may be made between December 1st dates to qualified members who separate or take leave from City service, *excluding those who are discharged, those who resign and those who resign with a vested* pension . . . . (emphasis added)

Moreover, Article 21(F) says:

> All of the above provisions, except paragraph A -1 through 6 shall be in accordance with Chapter 13, Article 7, of the Municipal Code of the City of Detroit which is incorporated herein by reference.

Chapter 13, Article 7 of the Municipal Code of the City of Detroit says, in pertinent part:

> For the purposes of this article, the following words and phrases shall have the meanings respectively ascribed to them by this section:
>
> .  .  .  .

15

> Longevity pay shall mean such pay, within the meaning of this article, is not a part of and shall not become a part of an employee's base pay. It is a reward based on length of service.
>
> .   .   .   .
>
> Service shall be construed to mean payroll time, exclusive of overtime or premium time. It shall include time spent on duty disability pension only for the purpose of computing the years of service for qualifying, and not for the purpose of continuing annual longevity payments. It shall include all time spent on military leave *but shall not include absence due to layoff or leaves of absence requiring approval of the civil service commission*, *nor time served prior to any resignation or discharge*. (Emphasis added)

The Court finds that the CBA governs Plaintiff's entitlement to longevity pay. The CBA, and the related section of the City Code, make clear that longevity pay is not salary, but is a reward based on length of service. Since Plaintiff's effective resignation date was November 30, 2007, he was not an employee qualified for a full longevity payment on December 1, 2007. Moreover, pro-rated longevity payments are not payable to those who resign from City service, and service does not include time served prior to any resignation. Thus, the time between when Plaintiff signed the Agreement and his resignation is not considered "service" for purposes of establishing eligibility for longevity payments.

The parties could have included a provision in the Agreement that Plaintiff would receive a longevity payment for 2007, regardless of his resignation date. They did not do so.

### 5. Vacation Days

Plaintiff says he is owed additional payment for 10 banked vacation days, totaling $4,396.00. Plaintiff says Defendant miscalculated his banked vacation days, but does not clearly explain how or why he came to this conclusion. *See* Affidavit of Craig

16

Schwartz. The CBA is silent on the issue of vacation time, as is the Agreement. Plaintiff has not established that he is entitled to any additional payment for banked vacation days.

### 6. Defendant Failed To Make Timely Payment To Plaintiff Under the Agreement

Defendant wrongfully delayed payment of banked time to which Plaintiff was entitled. The CBA expressly provides that payment of banked time is to be made within 30 calendar days of separation. Here, payment did not occur until May 23, 2008, 174 days after Plaintiff's effective resignation date of November 30, 2007. Pursuant to the terms of the CBA, Plaintiff is entitled to interest at the Michigan Judgment Interest rate for those 174 days.

## E. CONCLUSION

The Court makes the following findings:

1. The Agreement is not ambiguous;

2. Plaintiff agreed to resign as opposed to retire from the police department;

3. Plaintiff's effective resignation date was November 30, 2007;

4. Plaintiff was not entitled to salary, longevity pay, or any other benefits of employment after November 30, 2007, except as determined by procedures for resignation for uniformed police officers of the Detroit Police Department;

5. The procedures that govern resignation of uniformed police officers are in the Master Agreement between the City of Detroit and the Detroit Police Command Officers Association, July 1, 1996 - June 30, 2004;

6. Plaintiff was entitled to receive all of his banked time, except sick time, upon

resignation, at the Deputy Chief rate of $54.95 per hour; payout was to be as determined by procedures for resignation in the Detroit Police Department, namely the Master Agreement between the City of Detroit and the Detroit Police Command Officers Association, July 1, 1996 - June 30, 2004 ("CBA");

7. Payment for Plaintiff's banked time was separate and distinct from the payment for settling the case;

8. Plaintiff was not entitled to payment for banked sick time. Under the CBA, banked sick time is payable only upon retirement or death;

9. Plaintiff is not entitled to any salary payment after November 30, 2007; he agreed to resign on that date, the date he received the settlement check;

10. Plaintiff is not entitled to longevity pay because he was not a qualified employee on December 1, 2007;

11. Plaintiff has not established entitlement to additional payment for banked vacation days;

12. Plaintiff was to be paid for his banked time, other than sick time, within 30 days of separation, or by December 30, 2007;

13. Defendant paid Plaintiff's banked time on May 23, 2008, 174 days after it was due;

14. Plaintiff is entitled to interest on the banked time payment for 174 days at the money judgment interest rate.

For the above reasons, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS ORDERED**.

               s/Victoria A. Roberts
               Victoria A. Roberts
               United States District Judge

Dated: November 10, 2008

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 10, 2008.

s/Linda Vertriest
Deputy Clerk

---